UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO | ) ) ) | Civil Action No.: 05-525 |
| Petitioner, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the American Postal Workers Union's ("APWU" or "the plaintiff") Application for Temporary Restraining Order and Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support Thereof ("Def.'s Mem.") [D.E. # 12]. The APWU's request for injunctive relief is based upon its underlying Petition to Compel Arbitration ("Petition") [D.E. # 1] in which it seeks to compel the United States Postal Service ("USPS") to arbitrate whether the USPS is obligated to make voluntary early retirement available to eligible employees whose names have been forwarded to the USPS by the AWPU after the February 2, 2004 deadline imposed by the USPS. Def.'s Mem., Exhibit ("Ex.") 18.[1] The USPS has moved to dismiss the APWU's Petition and simultaneously opposes the motion for injunctive relief. The narrow issue that is the subject of this opinion is whether the dispute between the parties must be submitted to arbitration. The answer to this question necessarily turns on whether a current operative agreement reached between the parties requires that the

---

[1] Exhibit 18 is attached as Exhibit 15 to the Declaration of Greg Bell. Greg Bell is the Director of Industrial Relations for the American Postal Workers Union, AFL-CIO. Exhibit 15 to Bell's Declaration is a February 1, 2005 letter from Bell to Patricia Heath, USPS Labor Relations Specialist, which clarifies the dispute between the parties.

subject dispute be submitted to arbitration.  Particularly, whether provisions in a Memorandum Agreement negotiated in 2002, which provided for arbitration, survived a subsequent 2003 Memorandum Agreement that resolved disputes arising from the 2002 Agreement.  The Court answers this question in the affirmative and therefore concludes that the parties' current dispute must be submitted to arbitration on an expedited basis.

**I.     Background**

The APWU and the USPS are parties to collective bargaining agreements establishing the terms and conditions of employment for more than 300,000 employees of the USPS. Memorandum of Points and Authorities in Support of Petitioner's Application for a Temporary Restraining Order and Motion for Preliminary Injunction and in Opposition to Defendant's Motion to Dismiss ("Pet.'s Mem.") at 5.  Collectively, the APWU represents approximately 309,000 postal employees who work in various classifications and are covered by three individual and separately negotiated collective bargaining agreements.  Id.; Memorandum of Points and Authorities in Support of Defendant's Consolidated Motion to Dismiss and Opposition to Plaintiff's Petition to Compel Arbitration ("Def.'s Mem.") at 4.  The three collective bargaining agreements are: (1) the National Agreement covering approximately 307,000 employees; (2) the Information Technology and Accounting Service Centers ("IT/ASC") agreement covering approximately 1400 employees; and (3) the Operating Services agreement covering approximately 80 employees.  Def.'s Mem. at 4.  In 2002, the USPS determined that it needed to reduce the workforce of the employees covered by the collective bargaining agreements because of declining mail volume, automation, and new operating procedures.  Pet.'s Mem. at 5; Def.'s Mem. at 5.

To further their goal of reducing the workforce, the parties entered into an agreement known as the Memorandum of Understanding Re: Excessing ("2002 MOE").  Def.'s Mem. at 5.  This agreement essentially provided that the USPS would request permission from the Office of Personnel Management ("OPM") to offer eligible employees covered by the National Agreement the opportunity to take voluntary early retirement.  Id.  However, after implementation of the 2002 MOE, disputes arose and the APWU filed a grievance raising two issues: (1) did the USPS violate the 2002 MOE by denying some eligible employees the opportunity to retire and (2) did the USPS violate the 2002 MOE by not offering voluntary early retirement to employees covered by the IT/ASC and Operating Services collective bargaining agreements?  Id.  The USPS rejected the grievance, which prompted the APWU to petition this Court for injunctive relief that would require the USPS to submit the parties' dispute to expedited arbitration.  Id. at 6.  However, before a ruling was issued, the parties resolved their dispute and entered into the 2003 Memorandum of Agreement Re: Voluntary Early Retirement ("2003 MOA").  Id.

The parties are again before this Court regarding a dispute that has arisen with regard to the 2003 MOA.  Specifically, the current dispute concerns whether the USPS is obligated to make voluntary early retirement available to eligible employees whose names have been forwarded to the USPS by the AWPU after the February 2, 2004 deadline.  Pet.'s Mem., Ex. 18.  Despite the APWU's attempts to submit additional names for consideration, the USPS has declined to accept any additional names that were untimely submitted and has maintained this position since February 6, 2004.  Id. at 8.  After several failed attempts to convince the USPS to allow the APWU to submit additional names, on November 10, 2004, the APWU invoked the Administrative Dispute Resolution Procedures ("ADRP") included in the 2002 MOE and

requested that the USPS agree to expedited arbitration if the parties could not resolve the dispute. Pet.'s Mem. at 11 (citing Exhibit ("Ex.") 13 (Declaration of Greg Bell ¶ 22)). Consequently, the APWU "is seeking an arbitrator's decision that certain people it represents must be provided the opportunity to qualify for voluntary early retirement." Pet.'s Mem. at 4. However, for purposes of this motion, the APWU proffers that it is not seeking a ruling on the merits from this Court, but rather, is seeking an order to compel arbitration. Id.

## II.     Legal Standard for Injunctive Relief

In determining whether to grant a motion for a preliminary injunction, the Court must consider four factors: (1) whether the petitioner has demonstrated that there is a substantial likelihood that it will prevail on the merits of its claims; (2) whether the petitioner has shown that it would be irreparably harmed if injunctive relief is not awarded; (3) whether the issuance of injunctive relief would not "substantially harm" the other party; and (4) whether awarding the relief is in the public interest. Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001); Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977) (citing Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)). These factors should be balanced against one another and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995).

Issuance of an affirmative injunction requiring arbitration is appropriate in circumstances where the underlying dispute is subject to mandatory arbitration and the employer, rather than seeking arbitration of its grievance, is "intefer[ing] with and frustrat[ing] the arbitral process by which the parties had chosen to settle a dispute." Buffalo Forge Co. v. United Steel Workers of

Am., AFL-CIO, 428 U.S. 397, 407 (1976). The Court must also consider:

> whether issuance of an injunction would be warranted under ordinary principles of equity - - whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the [moving party]; and whether the [moving party] will suffer more from the denial of an injunction than will the [opposing party] from its issuance.

Boys Mkts. Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 254 (1970) (quoting Sinclair Ref. Co. v. Atkinson, 370 U.S. 195, 228 (1962).

"The law compels a party to submit [its] grievance to arbitration only if [it] has contracted to do so." Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 374 (1974); Abrams v. Communication Workers of America, 59 F.3d 1373, 1382 (D.C. Cir. 1995); Hammontree v. NLRB, 925 F.2d 1486, 1517 (D.C. Cir. 1991). Thus, "whether or not [a party is] bound to arbitrate . . . is a matter to be determined by the Court on the basis of the contract entered into by the parties." Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241 (1974). Accordingly, "[t]he role of the courts is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract, and the judicial task is limited to construing the agreement for that purpose." Blake Constr. Co. v. Laborers' Int'l Union of N. Am., AFL-CIO, 511 F.2d 324, 327 (D.C. Cir. 1974) (quoting United Steelworkers of Am. v. American Mfg. Co., 363 U.S. 564, 568 (1960).

### III. Analysis

#### A. The Timeliness of the Petition to Compel Arbitration

The USPS contends that the APWU's petition to compel arbitration is untimely. Def.'s Mem. at 9. "An action to compel arbitration is governed by the six-month limitations period set

forth in section 10(b) of the National Labor Relations Act ("NLRA")." 29 U.S.C. §160(b); <u>United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO, CLU Local 164 v. Pirelli Armstrong Tire Corp.</u>, 104 F.3d 181, 183 (8th Cir. 1997). A union's cause of action to compel arbitration accrues once the employer takes an unequivocal position that it will not arbitrate. <u>Associated Brick Mason Contractors, Inc. v. Harrington</u>, 820 F.2d 31, 38 (2d Cir. 1987); <u>McCreedy v. Local Union 971, UAW</u>, 809 F.2d 1232, 1237 (6th Cir. 1987) (citing <u>Fed'n of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.</u>, 736 F.2d 896, 902 (3d Cir. 1984). The USPS contends that the APWU was "on notice" that it would not accept additional names for consideration of voluntary early retirement after February 6, 2004, and in fact the APWU knew by as early as January 9, 2004, that it could not comply with the February 6, 2004 deadline to submit additional names. Def.'s Mem. at 10. Based on these circumstances, the USPS concludes that the APWU's Petition is time-barred. <u>Id.</u>

However, the APWU posits that "[a]ssuming arguendo, that the application of the six month statute of limitations as set forth in §10(b) of the [NLRA] is appropriate, the APWU's [Petition] is nonetheless timely." Pet.'s Mem. at 28. It further contends that "the refusal to accept additional eligible employees into the voluntary early retirement program does not constitute an unequivocal refusal to arbitrate. <u>Id.</u> at 29. Moreover, the APWU notes that on December 20, 2004, the Postal Service notified it that the dispute had been placed on the national arbitration docket. <u>Id.</u> (citing Bell Decl. ¶ 23). The APWU therefore concludes that its cause of action did not accrue until the USPS unequivocally refused to agree to expedited arbitration, which it alleges did not occur until after February 1, 2005. <u>Id.</u> at 30 (citing Bell Decl. ¶ 26).

Upon review of the various correspondence between the parties, this Court disagrees with

6

the USPS's claim that it took an unequivocal position not to submit the parties' dispute to arbitration as early as January or February of 2004. While the USPS did inform the APWU that it would not accept additional names after the February 4, 2004 deadline, this was not synonymous with an "unequivocal position that it would not arbitrate" the matter. McCreedy, 809 F.2d at 1237; see Harrington, 820 F.2d at 38. Furthermore, the USPS's December 2004 letter to the APWU, which stated that the dispute had been placed on the national arbitration docket, is also contrary to its assertion that its position regarding arbitration was clear since at least February 2004. Moreover, counsel for the APWU indicated at the hearing on this matter held on May 24, 2005, that in the months following February 2004, the parties were attempting to "work things out." The USPS did not dispute this point, but rather maintained its position that it had indicated that it would not accept additional names. Finally, assuming that the USPS's November 5, 2004 letter to the APWU, see Def.'s Mem., Ex. B of Ex. B, could be construed as an unequivocal denial to submit the matter to arbitration, the filing of this action would fall within the six-month limitations period of section 10(b) of the NLRB because the Petition to Compel Arbitration was filed on March 15, 2005, which was only four months after the issuance of the November 5, 2004 letter. Pirelli Armstrong Tire Corp., 104 F.3d at 183. Accordingly, this Court concludes that the Petition to Compel Arbitration was timely filed.

    **B.**    **The Parties' Agreements**

        **1.**    **The 2002 MOE**

As discussed above, the underlying issue for this Court to decide is whether, pursuant to the parties' agreements, their dispute should be submitted to arbitration? On this point, the USPS contends that the parties only agreed that they "would seek arbitration for grievances which

involve the interpretation, application of, or compliance with [ . . . the] Agreement, or any local Memorandum of Understanding not in conflict with the Agreement." Def.'s Mem. at 13 (citing Ex. D (Article 15 section 1: Definition of National Agreement)). Thus, the USPS argues that because "the [APWU] is not seeking resolution about a dispute arising out of the agreement between the parties," its demand for arbitration must be rejected. Id. at 12-13. Furthermore, while the USPS acknowledged that it was subject to the arbitration clause contained in the 2002 MOE as to disputes arising out of the 2002 agreement, it contends that "[b]ecause the 2003 MOA resolved any and all disputes that existed concerning the 2002 MOE, and replaced it with a new agreement applying to a more limited, and in some cases different group of employees, the 2002 MOE is irrelevant." Petitioner's [sic] Reply Brief in Support of Consolidated Motion to Dismiss and in Opposition to Petition to Compel Arbitration ("Def.'s Reply") at 4. As such, the USPS concludes that "[w]hatever dispute may exist, it must arise exclusively out of the parties 2003 MOA." Id.

On the other hand, the APWU contends that the USPS "cites the wrong mandatory arbitration clause" and that the mandatory arbitration clause contained in the 2002 MOE is the agreement which controls in this action. Pet's Mem. at 7, 17. Specifically, the APWU points to express language in the 2002 MOE that states: "Any disputes arising out of this memorandum will be handled in accordance with the Memorandum of Understanding re: Administrative Disputes Resolution Procedures." Id. at 7 (citing 2002 MOE). And notably, the 2002 MOE "expires for all purposes" not until "November 20, 2005." Id.

"[I]f a contract includes an arbitration clause, a presumption of arbitrability arises, meaning '[a]n order to arbitrate the particular grievance should not be denied unless it may be said

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Wash. Mail Haulers Union No. 29 v. Wash. Post Co., 233 F.3d 587, 589 (D.C. Cir. 2000) (quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)). Here, in response to the USPS's decision to reduce its workforce of the employees covered under three specific collective bargaining agreements, the parties entered into the 2002 MOE. That agreement contained, inter alia, an express provision for the resolution pursuant to the ADRP of "any disputes arising out of [the 2002 MOE]." See Pet.'s Mem. at 17 & Ex. 1 to Ex. 3 (2002 MOE). Thus, despite the USPS's argument to the contrary, it appears that the plain language of the 2002 MOE, providing for the application of the ADRP to any disputes between the parties, is controlling in this situation. See Atkinson, 370 U.S. at 241; Blake, 511 F.2d at 327 ("The role of the courts is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract, and the judicial task is limited to construing the agreement for that purpose.").

      This result is compelled because absent a subsequent agreement specifically overriding the arbitration provision of the 2002 MOE, this provision remains enforceable until November 20, 2005. "Although a contract clearly may be modified, the general rule is that the original contract stays in force, except as modified." Alaska Am. Lumber Co. v. U.S., 25 Fed. Cl. 518, 532 (U.S. Fed. Cl. 1992) (citing Hauben v. Harmon, 605 F.2d 920, 925 n. 2 (5th Cir. 1979) (citing 17 Am. Jur. 2d Contracts § 459)). Thus, with respect to the USPS's argument that the 2003 MOA replaces or subsumes the 2002 MOE, this argument is not convincing. This conclusion is mandated because the 2003 MOA was entered into solely for the purpose of "resolv[ing] disputes that had arisen with regard to the implementation of the [2002 MOE]". See Def.'s Mem., Ex. 10

(Bell Declaration) at Ex. 14 (2003 MOA).  Moreover, employees that were identified in the 2002 MOE were given extensions to seek voluntary early retirement under the original terms provided for in the 2002 MOE.  And, the USPS has identified nothing in the 2003 MOA which indicates that the terms of the 2002 MOE are no longer applicable or that the 2003 MOA has replaced the 2002 MOE in its entirety.  Accordingly, because an existing agreement between the parties requires that "any disputes" be resolved by arbitration, they are obligated to submit their disagreement to this mode of dispute resolution.

### 2.      Expedited Arbitration

The USPS contends that "[t]he real issue in this case is whether the [APWU] can compel the [USPS] to engage in <u>expedited</u> arbitration under procedures that are explicitly contrary to those negotiated by the parties.  Def.'s Reply at 2.  Specifically, it contends that Article 15.5.A.3 of the National Agreement "contains a well-defined arbitration procedure that was carefully and thoughtfully negotiated by the APWU and the [USPS]," wherein the "parties mutually agreed that neither party can demand an expedited arbitration on national level disputes, or advance cases on the national arbitration docket," except in two circumstances that are not appealable here.  <u>Id.</u>  The APWU acknowledges that "[u]nder the formal scheduling procedure [agreed to] by the parties to schedule arbitration of their disputes, arbitration cases are scheduled . . . in the order in which they are appealed to arbitration."  Pet.'s Mem. at 22.  However, the APWU argues that "[i]f that procedure were followed with respect to this dispute, it would be several years before the dispute could be heard in arbitration."  <u>Id.</u>  Consequently, because the USPS's authority to offer voluntary early retirement presently expires on July 1, 2005, the APWU asserts that it will be irreparably harmed if expedited arbitration is not ordered.  Otherwise, the APWU posits that its grievance will

10

be effectively nullified by the passage of time unless the USPS agrees, which it has not done, or is required by this Court to schedule the dispute for arbitration before the expiration date. Id. at 23.

"When the parties have agreed to arbitrate a dispute, a court may issue an injunction if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief." Int'l Bhd. of Elec. Workers, Local 1900 v. Potomac Elec. Power Co., 634 F. Supp. 642, 643 (D.D.C. 1986).  In evaluating these concerns, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp., 58 F.3d at 747.  Here, there is no question that the APWU will be irreparably harmed if it is not afforded the opportunity to have its dispute with the USPS subjected to the arbitration process prior to July 1, 2005.  "The Supreme Court in Boys Markets established that the existence of actual or threatened irreparable injury is a prerequisite to an award of injunctive relief from breaches of collective bargaining agreements." Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp., 668 F.2d 276, 285 (7th Cir. 1981) (citing Boys Mkts., 398 U.S. at 254).  Indeed, "[i]rreparable injury means not simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather 'injury so irreparable that a decision of the (arbitration) Board in the union('s) favor would be but an empty victory.'" Id. at 285-286 (quoting Bhd. of Locomotive Eng'rs v. Miss.-Kan.-Tex. R.R., 363 U.S. 528, 534 (1960)). Thus, "[a]n injunction in aid of arbitration is appropriate . . . only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration." Id. at 286.  Here, if the dispute is not submitted to arbitration on an expedited basis, the arbitration process will not merely be "frustrated" but will be effectively vitiated because permitting the process to proceed in its normal course would result in the dispute being arbitrated

only after the USPS's authority to authorize voluntary early retirement had already expired.  Thus, if the APWU prevailed after the USPS's authority expired, its success "would be but an empty victory."  Id. at 286.  Accordingly, because the APWU will be irreparably harmed if this matter is not submitted to arbitration on an expedited basis, and because irreparable harm to the moving party is "[t]he basis of injunctive relief in the federal courts," CityFed Fin. Corp., 58 F.3d at 747 (quoting Sampson v. Murray, 415 U.S. 61, 88 (1959), this Court orders that the parties' dispute be submitted to arbitration prior to July 1, 2005.

**IV.  Conclusion**

Based upon the foregoing analysis, this Court will grant the American Postal Workers Union, AFL-CIO's Motion for Preliminary Injunction on its Petition to Compel Arbitration.[2]

SO ORDERED this 6th day of June, 2005.

REGGIE B. WALTON
United States District Judge

---

[2] An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.